# In the United States Court of Federal Claims

No. 22-33C
Filed: August 23, 2023
NOT FOR PUBLICATION

---

**ALAN S. GUARDADO,**

                     ***Plaintiff,***

**v.**

**UNITED STATES,**

                     ***Defendant.***

---

*Robert Feldmeier*, Law Offices of Robert Feldmeier, Raleigh, NC, for the plaintiff.

*Elizabeth M. D. Pullin*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., *Major Patrick D. Kummerer*, U.S. Army Legal Services, of counsel, for the defendant.

## MEMORANDUM OPINION

***HERTLING*, Judge**

In January 2014, the plaintiff, Alan S. Guardado, a master sergeant in the U.S. Army, was convicted of multiple offenses under the Uniform Code of Military Justice ("UCMJ"). On appeal, several of the specifications were affirmed but others were set aside, along with the plaintiff's sentence. In March 2018, the plaintiff was re-tried and found not guilty of the most serious specification and was re-sentenced on his remaining convictions to 55 months of confinement, reduction in rank to E-1, and forfeiture of all pay and allowances. Due to the plaintiff's previous time served and associated credits, however, the plaintiff did not re-enter confinement. The plaintiff's demotion became effective on March 29, 2018, and he retired as an E-1 six months later, on September 30, 2018.

The plaintiff filed suit alleging that the United States, acting through the Army, violated Army Regulation 600-8-19, Enlisted Promotions and Reductions (April 25, 2017), when he was not automatically promoted on March 29, 2018, to E-2. The plaintiff claims that the conclusion of the Army Board for Correction of Military Records ("ABCMR") that he was ineligible for an automatic promotion is arbitrary and capricious. The plaintiff seeks back pay under the Military Pay Act, 37 U.S.C. § 204, and correction of his military records to reflect his promotion to E-2 as

of that date.  In addition, he seeks a commensurate adjustment to his retirement pay.[1]  The plaintiff does not claim that his discharge on September 30, 2018, was improper and does not seek reinstatement to active duty or active-duty back pay after that date.  Instead, he seeks active-duty back pay for the period prior to his retirement and retirement back pay thereafter.

Pending are the defendant's motion to dismiss and motion for judgment on the administrative record (ECF 27) and the plaintiff's cross-motion for judgment on the administrative record (ECF 26).  The defendant argues that the plaintiff's claim should be dismissed pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC") because the claim is nonjusticiable and because the plaintiff voluntarily retired from the Army on September 30, 2018.  On the merits, the defendant argues that promotions to E-2 are not automatic, that the plaintiff was not eligible for promotion, and that the Army correctly blocked any promotion.

The plaintiff's voluntary retirement from the Army on September 30, 2018, does not foreclose the exercise of jurisdiction over his claim because the plaintiff is not seeking active-duty back pay for after that date.  Because the plaintiff's claim is based on the theory the Army violated non-discretionary regulations which provide measurable standards, the claim is justiciable.  Accordingly, the defendant's motion to dismiss is denied.

On the cross-motions for judgment on the administrative record, Army regulations do not neatly cover the unusual facts underlying the plaintiff's claim.  The ABCMR and the defendant properly construe certain aspects of the regulations, but the plaintiff's reading of other aspects of the regulations is more consistent with the applicable regulations.  The ABCMR's decision fails to address explicitly aspects of the regulations and does not explain adequately why the plaintiff's claim was rejected pursuant to those regulations.  Accordingly, the ABCMR's decision is vacated, and the case is remanded for further proceedings.  The plaintiff's motion for judgment on the administrative record is granted in part and denied in part, and the defendant's motion is granted in part and denied in part.

---

[1] The plaintiff's complaint also seeks back pay for the difference between E-1 and E-8 pay from January 11, 2018, through March 28, 2018.  (*See* ECF 1 at 7-9.)  The ABCMR, however, already granted relief on this request after remand was ordered on May 10, 2022, and the plaintiff does not request any further relief regarding this claim.  (AR 306-07; *see also* ECF 13; ECF 26.)  The plaintiff confirmed at oral argument that the ABCMR accorded him all the relief he requested on this claim, which is therefore dismissed as moot.

## I.     BACKGROUND[2]

### A.     Plaintiff's Military Record

The plaintiff served in the Army from May 17, 1994, until his retirement on September 30, 2018.  (AR 257.)[3]  In August 2011, the plaintiff achieved the rank of Master Sergeant (E-8). (AR 342.)  The plaintiff was demoted in January 2014,[4] however, after he was tried and convicted by a general court-martial of:

> [O]ne specification of aggravated sexual contact with a child, three specifications of indecent liberties with a child, three specifications of battery of a child, four specifications of committing a general disorder, one specification of indecent assault, one specification of indecent acts, and one specification of using indecent language with a child, in violation of Articles 120, 128, and 134, UCMJ, 10 U.S.C. §§ 920, 928, 934 (2000 & Supp. V 2006; 2006; 2006 & Supp. I 2008).

*United States v. Guardado*, 77 M.J. 90, 92 (C.A.A.F. 2017).  The plaintiff was sentenced to "eight years, forfeiture of all pay and allowances, and a reduction in grade to E-1."  *Id.*  The court-martial did not adjudge a punitive discharge.

The plaintiff appealed to the Army Court of Criminal Appeals ("ACCA"), which dismissed two specifications of battery of a child, two specifications of general disorder, and the indecent-assault specification.  The ACCA affirmed the remaining convictions and reduced the sentence of confinement to seven years and eight months.  *United States v. Guardado*, 75 M.J. 889, 905-07 (Army Ct. Crim. App. 2016).

Following the ACCA's decision, the plaintiff appealed to the Court of Appeals for the Armed Forces ("CAAF"), which further set aside the aggravated sexual-contact specification and

---

[2] This recitation constitutes findings of fact based on the administrative record.  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1353-54 (Fed. Cir. 2005).

[3] Citations to the administrative record (ECF 7, *supplemented by* ECF 23) are cited as "AR" with the pagination reflected in that record as filed with the court.

[4] The ABCMR incorrectly noted that "[o]n 12 February 2015, [the plaintiff] was arraigned by general court-martial . . . and was tried for violating the UCMJ."  (AR 298.)  While February 12, 2015, is the date on which the "findings and sentence as promulgated in General Court-Martial Order Number 5" were issued after the convening authority approved the sentence (AR 344), the record reflects that the plaintiff was actually adjudged guilty on January 10, 2014 (AR 319, 353; *see also* AR 302 (referring to the plaintiff's DD Form 214 and "Dates of Time Lost During this Period" to include the time between January 10, 2014, the date the plaintiff was adjudged guilty, and January 11, 2018, the date the plaintiff was released from confinement)).

two specifications of general disorder. *Guardado*, 77 M.J. at 93-96. The CAAF also set aside the plaintiff's sentence and remanded the case for a rehearing on the sexual-contact specification. Specifically, the CAAF ordered that "[t]he record is returned to the Judge Advocate General of the Army with a rehearing on [the aggravated sexual-contact specification] and on the sentence authorized." *Id.* at 96. The CAAF otherwise affirmed the ACCA's rulings upholding or setting aside the remaining specifications. *Id.* In January 2018, the plaintiff was released from confinement pending a new trial and re-sentencing on his affirmed specifications. (AR 298.)

At the second trial on March 15, 2018, the plaintiff was acquitted of the only re-tried specification, that of aggravated sexual contact. (AR 19-20.) Following the retrial, the plaintiff was "sentenced . . . to reduction to the lowest enlisted grade of E-1, confinement for 55 months, [and] forfeiture of all pay and allowances" for the specifications on which he had been convicted in 2014. (AR 302.) Because of various credits and time served, the plaintiff was deemed to have completed his sentence as of November 2016, and he was not subject to further confinement. (AR 19-20; *see* AR 305 (noting the plaintiff's calculation of his release date based on his initial confinement date, his sentence, and the abatements and good conduct credits he received), 348 (the convening authority on June 11, 2018, noting the "portion of the sentence extending to confinement has already been served").) In accordance with 10 U.S.C. § 857(a)(1), the plaintiff's reduction in grade and forfeiture of pay and allowances became effective on March 29, 2018, 14 days after the sentence was adjudged. (AR 306.)

The convening authority approved the sentence on June 11, 2018. (AR 5.) A "flag" that had been placed in the plaintiff's record was removed on June 12, 2018.[5] (AR 352.) The record does not reveal when or provide the reason for the flag's placement in the plaintiff's file. (AR 308 (the ABCMR remarking that the document that removed the flag "suggests that the [plaintiff] was likely flagged soon after he was released from confinement").)[6] The flag codes used in the record were codes A and L (AR 352), which correspond to a "Commander's Investigation" and "Adverse Actions." Army Regulation 600-8-2, Suspension of Favorable Personnel Actions (Flag) (May 11, 2016), ¶ 2-2(a), (c).

---

[5] A flag is an administrative document whose "purpose . . . is to prevent and/or preclude . . . [e]xecution of favorable actions to a [s]oldier who may be in an unfavorable status (not in good standing)." Army Regulation 600-8-2, ¶ 2-1. When imposed due to a court-martial, a flag should be removed "when punishment from court-martial . . . is completed," unless "a court-martial has adjudged a punitive discharge," in which case "the individual will remain flagged until the conviction is final. . . ." *Id.* at 2-9(b)(1).

[6] The record regarding the flag is confused. The ABCMR's first decision suggests it was not aware of the flag, instead noting that the plaintiff's "record is void of DA Form 268 (Report to Suspend Favorable Personnel Actions[)] (Flag) or of any flag actions." (AR 38.)

On a date not disclosed in the record, the plaintiff applied for retirement.  That application was approved on July 12, 2018, and the plaintiff retired on September 30, 2018.  (AR 14, 255-56.)

### B.   ABCMR Decisions and Procedural History

On October 9, 2018, the plaintiff petitioned the ABCMR to correct his record to reflect that he held the rank and paygrade of an E-2 at the time of his retirement.  (AR 1-3.)[7]  The plaintiff argued that he should have been promoted to E-2 on March 16, 2018, the day after his acquittal on the re-tried aggravated sexual-contact specification, because he met the requirements for automatic promotion under Army Regulation 600-8-19, ¶¶ 1-10, 2-3(c)(1).  (AR 2-3.)  Specifically, he argued that he satisfied the six-month time-in-service requirement and met the requirements of Army Regulation 600-8-9, ¶ 1-10 because he was not serving a sentence of confinement and was not within one year of his conviction.  (*Id.*)

The ABCMR requested an advisory opinion from the Army Human Resources Command ("HR Command").  (AR 38, 40.)  That advisory opinion explained that "[i]n accordance with Army Regulation (AR) 600-8-19, paragraph 2-3 c(4), any [s]oldier previously reduced for misconduct must be fully qualified (without a waiver) for promotion to the next rank."  (AR 21.)  The advisory opinion then noted that a commander may "elect[ ] not to recommend a [s]oldier for promotion on the automatic promotion date" under Army Regulation 600-8-19, ¶ 2-3(d).  Here, the plaintiff's commander did so by marking "no" on an enlisted advancement report (AAA-117) dated September 1, 2018.  (AR 21-22, 40.)

The plaintiff submitted a rebuttal to the HR Command advisory opinion.  The plaintiff argued two points.  First, he asserted he had never received the counseling required by Army Regulation 600-8-19, ¶ 2-3(d) when he was not automatically promoted.  (AR 24.)  Second, he argued that he was beyond 12 months of his 2014 conviction, meaning he was eligible for promotion in August 2018.  (*Id.*)

On August 15, 2019, the ABCMR rejected the plaintiff's petition and adopted the reasoning of the HR Command advisory opinion.  (AR 36, 40.)  The ABCMR implicitly rejected the plaintiff's arguments without analyzing the plaintiff's claims that the regulations provide for automatic promotion.  (AR 40.)  Instead, the ABCMR relied on regulations concerning eligibility

---

[7] The plaintiff's complaint also seeks "in the alternative, correction of his military records to indicate promotion to E-3 (Private First Class) on April 11, 2018" as the remedy for his claim for "[w]rongful denial of promotion to E-2."  (ECF 1 at 9, 12.)  The plaintiff never raised any claim to the ABCMR that he was due promotion to E-3, and he has not pursued it in his motion for judgment on the administrative record.  That claim is therefore waived.

for promotion and the process by which a unit commander can block a promotion.  (AR 40, 42 (quoting Army Regulation 600-8-19, ¶ 2-3(c)(5)-(e)).)[8]

On January 11, 2022, the plaintiff filed his complaint.  (ECF 1.)  On May 9, 2022, the defendant filed an unopposed motion for remand.  (ECF 12.)  The motion was granted the next day, and the ABCMR was ordered to "review and consider the allegations contained in the complaint . . . and any additional arguments and evidence the plaintiff presents."  (ECF 13 at 1.)

On remand, the ABCMR requested and received an advisory opinion from the Army Office of the Deputy Chief of Staff, G-1 ("Army G-1").  The advisory opinion addressed two specific issues regarding the plaintiff's claim that he should have been promoted to E-2 identified by the ABCMR in its request.  (AR 319-22.)   The first issue was whether the plaintiff was entitled to a promotion, including whether the plaintiff's commander's failure to counsel, as required under Army Regulation 600-8-19, ¶¶ 1-27, 2-3(d), negated an attempt to block the promotion.  (AR 320-21.)  The second issue was whether it was appropriate for the plaintiff's commander to consider the plaintiff's misconduct that led to his court-martial in making a promotion decision in 2018.

Concerning the first issue, the advisory opinion offered three reasons why the plaintiff properly was not promoted.  First, the opinion explained that Army Regulation 600-8-2 required placing a flag on the plaintiff's file while he was in the "punishment phase," and that the flag prevented any promotion.[9]  (Id. (discussing Army Regulation 600-8-2, ¶¶ 2-1(a), 2-3(a), 2-4).)[10] Second, the advisory opinion reasoned that Army Regulation 600-8-19, ¶ 1-10(a)(7) rendered the plaintiff ineligible for promotion because he was "'denied favorable personnel actions under the provisions of AR 600-8-2.'"  (AR 321.)  Finally, the advisory opinion noted the prohibition in Army Regulation 600-8-19, ¶ 1-10(a)(2) against promoting soldiers "[w]ithin 12 months following a court-martial conviction."  (Id.)

---

[8] Although not mentioned in either the advisory opinion or the ABCMR decision, it appears the plaintiff was not considered to need a waiver for any promotion because he was classified as a "PV1 Eligible" for promotion rather than a "PV1 Eligible with Waiver" for promotion on the enlisted advancement report.  (AR 22.)

[9] The advisory opinion explained that the plaintiff "was found guilty at trial by general court-martial on 15 March 2018" (AR 320), but that was the date of the plaintiff's resentencing.  As noted, the plaintiff was acquitted of the only specification on which he was re-tried.

[10] The Army G-1 advisory opinion also concluded that the plaintiff had time left to serve in confinement.  (See AR 321 at n.1 ("This left [the plaintiff] with an additional 185 days of confinement to serve.").)  While this conclusion was incorrect (see AR 305), the error is not relevant because the ABCMR rejected the advisory opinion's "punishment phase" rationale. (See AR 307-08.)

Concerning the second issue, the advisory opinion answered in the affirmative but explained that "[t]he [c]ommander's intent and/or reasoning is immaterial due to the regulatory prohibition regarding the promotion of [s]oldiers within 12 months of a [c]ourt-[m]artial conviction." (*Id.*)

The plaintiff offered a rebuttal to this second advisory opinion. (AR 317-18.) He claimed that he "was qualified for promotion to E-2 under AR 600-8-9, para 1-10 in August, 2018." (AR 317.) The plaintiff argued that he had been convicted in 2014, and therefore the 12-month promotion bar in Army Regulation 600-8-9, ¶ 1-10(a)(2) did not apply to him because the date of his final sentencing was not the date of his conviction. The plaintiff also argued that he was not in the punishment phase following his rehearing because he "had already served the entirety of his sentence following rehearing." (*Id.*) As for the flag, the plaintiff quoted Army Regulation 600-8-2, ¶ 2-9(b)(1) to argue that the flag had to be removed "'when punishment from court-martial, civilian trial, or nonjudicial punishment is completed,'" *i.e.*, March 29, 2018. (AR 318.)

In February 2023, the ABCMR rejected the plaintiff's petition (AR 296-316), concluding that "except for the 'punishment phase' reason, each of the reasons Army G-1 advanced for denying the [plaintiff's] request provides a separate and sufficient reason for denying the [plaintiff's] request." (AR 307.)

Regarding the failure-to-counsel claim, the ABCMR found that, even assuming this allegation was true, the failure to counsel "did not negate, undermine, or render ineffective the removal action [from the promotion list] itself." (*Id.*) Specifically, "the Board found no authority (and the [plaintiff] has cited no authority) that directs the remedy for such a failure is to undo the removal action." (*Id.*) In any case, "the Board consider[ed] the company commander's error in this regard (assuming it occurred) to be harmless" because the plaintiff "was a seasoned [s]oldier" who "must have known, or should have known, the reason why the company commander removed him from the promotion list (i.e., the [plaintiff's] proven proclivity for serious sexual misconduct, including sexual misconduct involving minors.)" (*Id.*)

The ABCMR was also unpersuaded by the plaintiff's arguments concerning the 12-month promotion bar. Instead, the ABCMR concluded that, because the convening authority could have taken favorable action on the plaintiff's punishment issued in March 2018, "one may reasonably conclude that the [plaintiff's] convictions were not finalized, and his criminal prosecution not completed, until the [convening authority's] 11 June 2018 action." (*Id.*) The ABCMR added that "[i]rrespective of the soundness of Army G-1's opinion regarding the 12-month rule, . . . the Board found each of the remaining multiple reasons proffered by Army G-1 [except for the punishment phase rationale] to be persuasive, and individually sufficient, reasons for denying [the plaintiff's] request for promotion to E-2." (AR 307-08.) The ABCMR listed these reasons as including:

> the flagging action that was, or should have been, imposed against the [plaintiff] after he was released from confinement; the company commander's action removing the [plaintiff] from the E-2 promotion list; and the fact that the [plaintiff], at the time, was

> required to be fully qualified (without waiver) for promotion to E-2
> due to his adjudged reduction to E-1 (per AR 600-8-19).

(AR 308.)

On May 31, 2023, the plaintiff filed a motion for judgment on the administrative record. (ECF 26.)  On June 30, 2023, the defendant filed a cross-motion for judgment on the administrative record combined with a motion to dismiss pursuant to RCFC 12(b)(6).  (ECF 27.) On July 19, 2023, the plaintiff filed his response (ECF 30), and the defendant filed its reply on August 1, 2023 (ECF 32).  Oral argument was held on August 10, 2023.

## II.      JURISDICTION

The Tucker Act limits the jurisdiction of the Court of Federal Claims to causes of action based on money-mandating statutes and regulations.  28 U.S.C. § 1491(a)(1). Although the Military Pay Act is generally recognized as money-mandating, "a service member is entitled only to the salary of the rank to which he is appointed and in which he serves."  *Smith v. Sec'y of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004); *Antonellis v. United States*, 723 F.3d 1328, 1333 (Fed. Cir. 2013).  Promotion claims may be money-mandating under the Military Pay Act, however, in two circumstances: (1) when a service member meets the legal requirements for promotion, *i.e.*, the service member has a "clear-cut legal entitlement," but the military has refused to recognize that entitlement; or (2) when non-promotion leads to the service member's involuntary discharge.  *Smith*, 384 F.3d at 1294-95.

Questions of whether a plaintiff voluntarily left the military or whether the plaintiff has a "clear-cut legal entitlement" to pay are not jurisdictional.  Instead, they "should be considered in the context of the merits of a plaintiff's case in determining whether a plaintiff can take advantage of § 204's money-mandating status."  *Metz v. United States*, 466 F.3d 991, 997-99 (Fed. Cir. 2006).

Because the plaintiff's claim arises under the Military Pay Act, jurisdiction exists over the plaintiff's claim for promotion and back pay.  The defendant appropriately moved for dismissal under RCFC 12(b)(6).

## III.     STANDARDS OF REVIEW

### A.      Motion to Dismiss

On a motion to dismiss under RCFC 12(b)(6), a court must accept as true a complaint's well-pleaded factual allegations and construe them in the manner most favorable to the plaintiff.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  All reasonable inferences must be drawn in favor of the non-moving party.  *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

To avoid dismissal, a complaint must allege facts "plausibly suggesting (not merely consistent with)" a showing that the plaintiff is entitled to the relief sought.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  "The plausibility standard is not akin to a 'probability

8

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 556).

### B.     Motion for Judgment on the Administrative Record

On a motion for judgment on the administrative record pursuant to RCFC 52.1, the court's review is limited to the administrative record, with findings of fact made as if there was a trial on a paper record.   *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1353-54 (Fed. Cir. 2005); *see also Young v. United States*, 497 F. App'x 53, 58-59 (Fed. Cir. 2012) (*per curiam*) (applying the *Bannum* standard of review to an RCFC 52.1 motion involving a decision of a military records-correction board), *cert. denied*, 569 U.S. 964 (2013).   The court must determine whether a party has met its burden of proof based on the evidence in the administrative record.   *Bannum*, 404 F.3d at 1355.   Genuine issues of material fact will not foreclose judgment on the administrative record.   *Id.* at 1356-57.

When reviewing the decisions of military records-correction boards, the court uses the review standard of the Administrative Procedure Act ("APA").   *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009); *see* 5 U.S.C. § 706 (establishing the scope of review under the APA).   Under the APA's standard of review, a court must uphold a military records-correction board's decision "unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence."   *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010).

## IV.   DISCUSSION

The defendant moves to dismiss the plaintiff's complaint for failing to state a claim under RCFC 12(b)(6), arguing that the plaintiff's claim is nonjusticiable, and that the plaintiff's voluntary retirement bars a claim under the Military Pay Act.   Both parties move for judgment on the administrative record under RCFC 52.1.

### A.     The Motion to Dismiss

The defendant's motion to dismiss sets forth two issues: whether the plaintiff's claim for promotion is justiciable and whether the supposedly voluntary nature of the plaintiff's retirement precludes relief.

#### 1.     Justiciability

"[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs."   *Dep't of Navy v. Egan,* 484 U.S. 518, 530 (1988).   "[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."   *Dodson v. U.S. Gov't, Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).   "It is not the business of the court to run the Army."   *Knightly v. United States*, 227 Ct. Cl. 767, 769 (1981).   That said, "[a] court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion."   *Murphy v. United States*, 993 F.2d 871, 873 (Fed.

Cir. 1993).  A court must take care not to intrude into the military's sphere and exercise of its discretion; the judicial function is limited to ensuring only that the military's procedures "were followed." *Id.*

Nevertheless, "the courts can review promotion decisions for violations [of] the Constitution, statutes, or regulations." *Lewis v. United States*, 458 F.3d 1372, 1377 (Fed. Cir. 2006).  In other words, "if an individual has a 'clear cut legal entitlement' to a position, but subordinate officials in the government misinterpret the Constitution, statutes, or regulations, and improperly decline to recommend that individual for nomination or appointment, redress may be available in the courts." *Id.* (quoting *Smith*, 384 F.3d at 1294-95).

At its core, the plaintiff's claim is that the ABCMR and the Army misinterpreted the requirements of Army Regulation 600-8-19 ¶¶ 1-10 and 2-3(c) when they failed to recognize that these regulations mandated his automatic promotion to E-2.  Importantly, the resolution of the plaintiff's claim does not require a review and evaluation of the discretionary decision of the plaintiff's commander not to recommend the plaintiff for promotion on the September 1, 2018, enlisted advancement report.  Instead, the plaintiff's claim can be resolved by deciding whether the applicable Army regulations required his automatic promotion, that no circumstances rendered him ineligible for such an automatic promotion, and that his commander's actions were too late under Army regulations to block the promotion.  Hence, resolution of the claim requires a determination of what the regulations required, not whether an exercise of discretion was appropriate.

Indeed, the defendant has not argued that any decision challenged by the plaintiff is committed to the discretion of the Army.  The defendant has also not argued that the "pertinent regulations or instructions [do not] provide sufficient tests or standards against which the court can measure the military's conduct." *Antonellis*, 723 F.3d at 1334 (cleaned up).  Instead, the defendant simply argues "[t]he subject of military promotions is beyond the competence of courts to review."  (ECF 27 at 14-15 (citing *Dysart v. United* States, 369 F.3d 1303, 1315 (Fed. Cir. 2004)).)

While it is true that "[i]n general, the subject of military promotions is beyond the competence of courts to review," *Dysart*, 369 F.3d at 1315, that general rule is subject to an exception that applies here.  "[A] normally nonjusticiable decision is not insulated from judicial review if it flows directly from the breach of a statute or regulation.  Once a breach has been established, the obligation falls to the Board, or if necessary to the court, to take steps to grant thorough and fitting relief." *Roth v. United States*, 378 F.3d 1371, 1386 (Fed. Cir. 2004) (cleaned up); *see also Lewis*, 458 F.3d at 1378 n.8 (emphasis in original) (describing *Law v. United States*, 11 F.3d 1061 (Fed. Cir. 1993), as "holding that the court has the authority to *recognize* a promotion by awarding back pay").

This case implicates neither the President's discretion over the appointment of officers nor the Senate's confirmation power.  *See Lewis*, 458 F.3d at 1376-78; *Boyce v. United States*, 165 Fed. Cl. 187, 200 (2023) (holding justiciable a claim for "retroactive, automatic promotion and attendant back pay to E-3 and to E-4" based on an alleged violation of Air Force regulations).  The plaintiff was an enlisted soldier and is seeking recognition of the most junior

promotion possible, from E-1 to E-2, based on Army regulations.  Therefore, cases like *Lewis* or *Dysart*, which rested in significant part on the rationale that Congress cannot compel the President by statute to appoint military officers, do not foreclose the plaintiff's claim.  *Lewis*, 458 F.3d at 1376-78; *Dysart*, 369 F.3d at 1315-17.  In contrast to those cases, the plaintiff's claim rests on regulations that the Army itself has adopted.

The governing regulation for the promotion of enlisted personnel is Army Regulation 600-8-19.  Under this regulation, local commanders have the authority to promote junior enlisted personnel "to the ranks of specialist (SPC) and below."  Army Regulation 600-8-19, ¶ 1-7(c); *see also* ¶ 1-9(b) (authorizing commanders to promote soldiers to the ranks of private enlisted two ("PV2"), private first class ("PFC"), and SPC.  The regulation, however, also repeatedly refers to the "automatic" promotion of junior enlisted personnel.  For example, ¶ 1-8 provides that "[HR Command] . . . will – (1) [a]utomatically promote [s]oldiers to the ranks of private enlisted two (PV2) . . . upon attainment of the required time in service (TIS) and time in grade (TIG) requirements established in this regulation," leaving to unit commanders "to promote all other [junior] [s]oldiers on an individual basis."  Paragraph 2-3, which established the specific rules for junior enlisted promotions, also provides that these promotions "will be made automatically by the [electronic military personnel office] database."

Paragraph 2-3(c)(1), (4)-(5) of Army Regulation 600-8-19 specifies the eligibility criteria for promotion to E-2, requiring soldiers to have six months of time-in-service, to "meet eligibility criteria in paragraph 1-10," and to be fully qualified without a waiver for promotion if previously reduced in rank for "misconduct, inefficiency, or cause."  Among the criteria relevant to the plaintiff in ¶ 1-10 are: whether a soldier up for promotion is "[w]ithin 12 months following a court-martial conviction"; has an "[a]pproved retirement"; or "is denied favorable personnel actions under the provisions of AR 600-8-2," *i.e.*, whether the soldier's file is subject to a flag.  None of these criteria, however, provides any discretionary basis to block a promotion.

Other provisions of Army Regulation 600-8-19 do afford a soldier's commander the discretion to block an automatic promotion.  Paragraph 2-3(d) specifically addresses the timeline and process by which a commander can "elect[ ] not to recommend a [s]oldier for promotion on the automatic promotion date . . . ."  That process results in a flag being placed on a soldier's file, and the existence of a flag blocks an otherwise-automatic promotion.  Army Regulation 600-8-19, ¶ 2-3(d).

Paragraph 2-3 of Army Regulation 600-8-19 provides no specific reasons for which a commander may choose to recommend or not to recommend a soldier for promotion.  Paragraph 1-27 of the same regulation, which governs the requirement to counsel junior soldiers not recommended for promotion, directs commanders to include in their counseling "information as to why the [s]oldier was not recommended and what the [s]oldier can do *to correct deficiencies or qualities that reflect a lack of promotion potential.*"  (Emphasis added.)  That reference would be unnecessary if soldiers could only have their promotions blocked for non-discretionary reasons that result in a flag or otherwise fall within Army Regulation 600-8-19, ¶ 1-10.  It would also make no sense for the regulation to provide that a commander can "*elect*[ ] not to recommend a [s]oldier for promotion," Army Regulation 600-8-19, ¶ 2-3(d) (emphasis added), if the commander could only consider *mandatory* criteria that automatically render a soldier non-

11

promotable.  Therefore, under the process established by the regulations, the decision to block a promotion is within the unit commander's discretion.

As noted, however, resolving the plaintiff's challenge does not require a consideration of the exercise of discretion by the plaintiff's commander to block the plaintiff's promotion in September 2018.  The plaintiff's claim is that he automatically held the rank of E-2 by operation of law pursuant to Army Regulation 600-8-19 in March 2018 as soon as he was eligible, and that any action taken by the Army to block the promotion in September 2018 was too late and contrary to regulations.  *See Lewis*, 458 F.3d at 1377.  The plaintiff's claim flows directly from an alleged breach of a non-discretionary regulation which provides measurable standards against which to judge the Army's actions.  The plaintiff's claim is therefore justiciable.

## 2.     The Voluntariness of the Plaintiff's Retirement

The defendant argues that the plaintiff's claim is precluded because he voluntarily retired on September 30, 2018.  (ECF 27 at 15, 17.)  In support, the defendant relies on *Tippett v. United States*, 185 F.3d 1250 (Fed. Cir. 1999), *abrogated on other grounds by Metz*, 466 F.3d 991; *Sammt v. United States*, 780 F.2d 31, 33 (Fed. Cir. 1985); and *Sommers v. United States*, 149 Fed. Cl. 529 (2020).  In response, the plaintiff argues that these cases "all deal with claims for regular pay claimed to accrue after separation because of improper, involuntary separation or retirement."  (ECF 30 at 2.)

The cases cited by the defendant are distinguishable from this case.  All the cited cases involved plaintiffs seeking reinstatement to the military based on the theory that they had been improperly discharged.  In *Tippett*, the plaintiff "sought reinstatement in the Army and back pay and allowances in the grade of captain from June 1, 1990," the date of his discharge.  185 F.3d at 1254.  In *Sammt*, the plaintiff "contended that his non-selection to lieutenant colonel was based, in part, on erroneous information in his military records, and he requested a judgment awarding him active duty pay and allowance as a major from [the date of his voluntary retirement] to date . . . ."  780 F.2d at 32.  In *Sommers*, the plaintiff "claim[ed] that his retirement from the Army was involuntary and [he] s[ought] restoration to his rank and the back pay and benefits he would have earned had the Army not forced him out of the service."  149 Fed. Cl. at 531.

The plaintiff here, by contrast, is arguing that, "*while still on active duty*, he was due automatic promotion."  (ECF 30 at 2 (emphasis in original).)  The plaintiff seeks neither reinstatement nor active duty back pay from after his retirement through the date of this decision; rather, he seeks "backpay, back allowances, and *back retired pay*" that he claims is due to him "by operation of law."  (ECF 1 at 2 (emphasis added).)

The relevant case addressing when a service member or retired service member can claim pay based on a rank the military did not recognize the service member to hold is *Smith v. Secretary of the Army*.  In that case, the Federal Circuit explained:

> As a general matter, a service member is entitled only to the salary of the rank to which he is appointed and in which he serves. . . . There are two recognized exceptions to that general rule.  Under the

> first exception, an action for money arises under the Military Pay
> Act in the unusual case in which, on the plaintiff's legal theory, there
> is a clear-cut legal entitlement to the promotion in question, i.e., he
> has satisfied all the legal requirements for promotion, but the
> military has refused to recognize his status.  Under the second
> exception, an action for money arises under the Military Pay Act
> when the decision not to promote the service member leads to the
> service member's compelled discharge. . . .  For the second
> exception to apply, a service member's discharge must be
> involuntary.

*Smith*, 384 F.3d at 1294-95 (cleaned up).

As already discussed, the plaintiff claims that "he has satisfied all the legal requirements for promotion, but the military has refused to recognize his status." *Id.* at 1294.  The plaintiff's claim therefore falls under the first "clear-cut legal entitlement" exception, rather than the second exception for back pay claims related to an improper discharge.  Notably, the legal entitlement exception does not require showing the plaintiff's discharge was involuntary.  That requirement only applies to back pay claims brought under the second exception, when "the decision not to promote the service member leads to the service member's compelled discharge." *Id.* at 1295.

Under *Smith*, the second exception requires that "the relief that is sought . . . must result in rendering the service member's discharge improper, thus entitling the service member to a monetary remedy." *Id.*  The plaintiff's claim is not based on his discharge.  Rather, the plaintiff's claim is that Army regulations automatically promoted him to E-2, and the Army "refused to recognize his status." *Id.* at 1294.

Because the plaintiff's claim falls under the first *Smith* exception, the voluntariness of the plaintiff's retirement is irrelevant, and the defendant's motion to dismiss is denied.

**B.    The Cross-Motions for Judgment on the Administrative Record**

**1.    The Parties' Arguments**

In his motion for judgment on the administrative record, the plaintiff argues that ABCMR made three key errors.  (ECF 26-1 at 8-18.)

First, the plaintiff argues that the criteria in Army Regulation 600-8-19, ¶ 1-10 are not applicable to him because those criteria apply only to the promotions of soldiers who are an E-4 or higher, and he was seeking only a promotion from E-1 to E-2.  Even if the criteria applied, the plaintiff argues that the ABCMR incorrectly conflated his convictions with his sentencing when it concluded that in 2018 the plaintiff was within 12 months of his 2014 court-martial conviction.  (*Id.* at 9-13.)  Second, the plaintiff argues that he was not properly subject to a flag because the flag had to be removed no later than three working days after his "'punishment from court-martial . . . [was] completed'" on March 29, 2018.  (*Id.* at 13-15 (quoting Army Regulation 600-

8-2, ¶ 2-9(b)(1).)[11]   Relatedly, the plaintiff contends that the convening authority's review of his sentence is irrelevant to the date of his conviction because the convening authority could not increase his sentence or overturn his convictions.  (ECF 30 at 7-9.)  Third, the plaintiff argues that his commander's attempt in September 2018 to block a promotion was untimely and failed to include the counseling required under Army Regulation 600-8-19, ¶ 2-3(d).  (ECF 26-1 at 15-18; ECF 30 at 5-7.)

In response, the defendant counters that the plaintiff was ineligible for promotion.  First, the defendant argues that the plaintiff was not fully qualified for promotion under Army Regulation 600-8-19, ¶ 2-3(c) because he had been reduced in rank.  (ECF 27 at 18-19.)  Second, the defendant contends that the plaintiff was properly flagged until June 12, 2018, and that the plaintiff's retirement was approved on July 12, 2018.  According to the defendant, these conditions rendered the plaintiff non-promotable under Army Regulation 600-8-19, ¶ 1-10, applicable to junior enlisted promotions pursuant to Army Regulation 600-8-19, ¶ 2-3(c)(4).  (*Id.* at 18-21.)  Third, the defendant denies the existence of any automatic promotion process to E-2, contending that Army regulations provide for company commanders to manage all promotions of junior soldiers.  (*Id.* at 19-22.)  Fourth, the defendant argues that the plaintiff was still within 12 months of a conviction because the plaintiff's reduction in rank was not final until the convening authority approved it on June 11, 2018.  Therefore, the defendant reasons, removal of the flag on the plaintiff before that date "would have second guessed the convening authority's decision on the sentence in the case."  (*Id.* at 20-23; ECF 32 at 12-14 (relying on the rules for when a court-martial conviction is final under Rule 1209(a)(2) of the Rules of Courts-Martial ("RCM")).)  Finally, the defendant argues that the failure to counsel the plaintiff on why he was not promoted was harmless error and that the timeframes specified in Army regulations are not binding.  (ECF 27 at 24; ECF 32 at 13 (citing *Lewis*, 458 F.3d at 1378-79).)

The parties' briefs effectively present three questions: (1) do Army regulations provide for automatic promotions of junior enlisted personnel; (2) was the plaintiff eligible for an automatic promotion; and (3) was the plaintiff's promotion successfully blocked, notwithstanding the failure to counsel, or was the error harmless?

## 2.    Interpreting Army Regulations

In deciding the questions presented by the parties, the key issue is the interpretation of Army regulations.  "To interpret a regulation [a court] must look at its plain language and consider the terms in accordance with their common meaning."  *Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir. 1997).

---

[11] During oral argument, the plaintiff conceded that the Army had three days to remove the flag on his file after his punishment was complete.  *See* Army Regulation 600-8-2, ¶ 1-9 ("A [f]lag will be removed within 3 working days after the [s]oldier's status changes from unfavorable to favorable.").  Because the plaintiff completed his punishment on March 29, 2018, the plaintiff's claim is that the Army had to remove the flag by April 2, 2018.

> When interpreting regulations, we apply the same interpretive rules we use when analyzing the language of a statute. *Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1365 (Fed. Cir. 2015) (citing *Tesoro Haw. Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005)). And it is well established that, when interpreting statutes or regulations, "[t]he plain meaning that we seek to discern is the plain meaning of the whole statute [or regulation], not of isolated sentences." *Beecham v. United States*, 511 U.S. 368, 372, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994) (citations omitted).

*Boeing Co. v. Sec'y of Air Force*, 983 F.3d 1321, 1327 (Fed. Cir. 2020).

"Interpretation of a regulation is a question of law" that is "reviewed without deference." *Cameron v. United States*, 550 F. App'x 867, 872 (Fed. Cir. 2013). When "a term in a regulation is ambiguous, the Supreme Court has accorded deference to the agency's interpretation of its own regulation," but there are limits. *Id.* Plainly erroneous interpretations receive no deference, and neither do those that are "nothing more than a convenient litigating position or a post hoc rationalization advanced by an agency seeking to defend past agency action." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012) (cleaned up).[12]

In *Cameron*, the Federal Circuit found that two advisory opinions written after the plaintiff had challenged his discharge and on which the ABCMR relied reflected an "after-the-fact rationalization prompted by [the plaintiff's] efforts to seek relief rather than a consistent policy. . . ." 550 F. App'x at 874. Similarly, here the Army G-1's advisory opinion and the ABCMR's decision relying on that opinion were prompted by the present litigation. The defendant has argued that deference is due to the military for the decision not to promote a soldier. The defendant has not argued, however, that either the interpretation of the regulations offered by the Army G-1's advisory opinion or the ABCMR's decision is due any deference under *Auer v. Robbins*, 519 U.S. 452 (1996), and its progeny. Therefore, the interpretation of the relevant regulations is a question of law; this court owes the interpretation of the ABCMR and Army G-1 only the deference afforded to their persuasive value.

### 3.     The Automatic-Promotion Process

For the plaintiff to be entitled to relief, he must have been entitled to an automatic promotion between April 2018 and July 2018. The plaintiff's entire claim is predicated on such an entitlement, as he argues that he was entitled to a promotion to E-2 as soon as the flag was required to be removed. According to the plaintiff, the flag had to be removed no later than April 2, 2018, meaning he was promotable as of that date. The ABCMR did not directly address whether the plaintiff was entitled to the promotion under Army regulations, but inferentially it

---

[12] On the degree of deference due to an agency's interpretation of its own regulations, see Judge Solomson's thorough analysis in *Defense Integrated Sols., LLC v. United States*, 165 Fed. Cl. 352, 368-72 (2023).

determined he was not.  The defendant disputes the plaintiff's claim that he was so entitled.
Therefore, the question of whether Army Regulation 600-8-19 provides for the automatic
promotion of junior enlisted personnel is a necessary predicate to relief on the plaintiff's claim.

Two paragraphs of the applicable regulation suggest that commanders have authority
over the promotions of junior soldiers.  Paragraph 1-7 of Army Regulation 600-8-19 establishes
the general principles of the promotion process for junior enlisted personnel and non-
commissioned officers according to their rank.  For the most junior enlisted personnel, ¶ 1-7(c)
"[a]uthorizes [commanders] to promote [s]oldiers to the ranks of specialist (SPC) and below."
This provision contrasts with the "centralized" and "semi-centralized" promotion process
provided by ¶ 1-7(a)-(b) for more senior enlisted ranks.  Paragraph 1-9(b) also provides that
"[c]ompany, troop, battery, and separate detachment [commanders] . . . are authorized to
promote [s]oldiers to the ranks of PV2, PFC, and SPC."

Yet ¶ 1-8 of this regulation also provides:

> [HR Command] . . . will – (1) [a]utomatically promote [s]oldiers to
> the ranks of private enlisted two (PV2), private first class (PFC), and
> SPC upon attainment of the required time in service (TIS) and time
> in grade (TIG) requirements established in this regulation.  Unit
> [commanders] will take action to promote all other [s]oldiers on an
> individual basis.

This paragraph therefore clearly states that HR Command promotes junior enlisted soldiers
automatically while leaving the promotions of junior soldiers who have not met minimum time-
in-service or time-in-grade requirements to unit commanders.

Read together, these provisions suggest that there are two separate processes available for
promotions of junior enlisted personnel: one involves commanders' authorization to issue
promotions for soldiers who do not meet minimum requirements, and the other involves an
automatic process for promotions of junior enlisted personnel by HR Command who do meet
those requirements.

Paragraph 2-3 of Army Regulation 600-8-19 details the rules for promotions of junior
enlisted personnel.  Subsection (a) provides that the enlisted advancement report is "the official
instrument[ ] . . .  used by [commanders] to recommend [s]oldiers for promotion to SPC and
below.  When the [commander] denies promotion, he or she may promote the [s]oldier on the
next automated enlisted advancement report, provided the [s]oldier is otherwise qualified in
accordance with paragraph 1–10."

Subsection (b) provides that "[p]romotions to PV2, PFC, and SPC will be made
automatically by the [electronic military personnel office database] ([Regular Army]) . . . or
immediately with promotion orders ([Army National Guard]) for posting to the automated
personnel file and/or the master military pay file."

Subsection (c) provides the eligibility criteria for "automatic" promotion in the Regular
Army and U.S. Army Reserves and "immediate" promotion in the Army National Guard to the

ranks of PV2 (E-2), PFC, and SPC, including that: "(1) [p]romotion to PV2 is 6 months TIS"; "(4) [s]oldiers must meet eligibility criteria in paragraph 1-10"; and "(5) [a]ny [s]oldier previously reduced (for misconduct, inefficiency, or cause) must be fully qualified (without a waiver) for promotion to the next higher rank."

Subsection (d) specifies how a commander can block an automatic promotion, and subsection (e) sets out the steps that will be used to generate a flag to block an automatic promotion. Paragraph 2-3 then includes additional subsections dealing with the required forms for promotion and exceptions to the eligibility criteria not relevant to this case.

Notably, promotion at these most junior enlisted ranks is referred to as "automatic" throughout these provisions. The regulations provide no special definition for the word "automatic," and it is not a word specific to the military or with apparent special meaning within the military. That word must therefore be accorded its plain meaning, as it is not a technical term or term of art. The regulations on their face provide an automatic process for junior enlisted promotions. The existence of an automatic process, however, does not mean that such promotions cannot be stopped. Subsections (d) and (e) of ¶ 2-3 provide steps for a commander to block a promotion. Specifically, the form that is used to block the promotion, the DA Form 268, "will be submitted no later than the 20th day of the month preceding the month of automatic promotion." Army Regulation 600-8-19, ¶ 2-3(d). Absent that intervention, however, the regulation creates a default rule that a junior enlisted soldier will be promoted "automatically" by HR Command when eligible.

This interpretation is also supported by ¶ 2-4, which has a table listing all the steps for carrying out a junior enlisted promotion. Pursuant to step 9, battalion human resources will "[r]eceive AAA–117, DA Form 4187, and DA Form 268 back from the [commander] *with selection denials* for promotion to PV2, PFC, and SPC." (Emphasis added.) If a commander does not provide a DA Form 4187, then battalion human resources will prepare the form under step 10. Although step 8 provides for a commander to "[s]elect eligible [s]oldiers by annotating the AAA–117 YES for select or NO for denial of promotion," the fact that only denials need to be returned to battalion human resources, and the fact that a necessary form will be prepared by battalion human resources if not completed by a commander, support an interpretation that gives its plain and ordinary meaning to the word "automatic" in the regulation: an eligible junior enlisted soldier will be promoted unless the commander affirmatively acts to block that promotion.

The defendant's interpretation of the regulation, that commanders must always recommend a soldier's promotion before the soldier is promoted, would read the word "automatic" out of the regulation. The mere fact that a commander can stop a promotion does not mean the process is not automatic, as the defendant contends. For example, if the President is presented with a bill passed by Congress and does nothing, he will automatically have vetoed it after 10 days (excluding Sundays) by the so-called pocket veto. U.S. Const. art. I. § 7, cl. 2. This automatic process does not mean the President does not have the discretion to veto the bill sooner or to sign the bill into law, and such discretion does not undermine the automatic nature of the pocket veto. *Id.* The automatic process is simply the default that occurs if nothing else is done. So too here do the applicable Army regulations provide that, by default, junior soldiers

17

will be automatically promoted when they are eligible unless their commander acts otherwise to block the promotion.

The automatic nature of the process, however, does not require promotions to be carried out immediately, as the plaintiff argues. Paragraphs 2-3 and 2-4 of Army Regulation 600-8-19 lay out in detail the processes, forms, and timelines for the completion of various steps to carry out a promotion. The detailed regulatory process counsels against any interpretation that an automatic promotion must take effect immediately. Paragraph 2-3 distinguishes between "automatic" and "immediate" promotions, using the word "immediate" for Army National Guard promotions, and "automatic" for Regular Army promotions. The use of the distinct terms within the same provision connotes that the two terms carry different meanings, and that "automatic" promotions are not "immediate."

Additionally, some allowances must be made for human intercession, action, and error. Paragraphs 2-3 and 2-4 specify only three relevant fixed-time requirements for the promotion process for junior enlisted soldiers. First, under step 1 of ¶ 2-4, the enlisted advancement report will be generated "on the 2nd to 5th working day of the month prior to the promotion month" before being forwarded "to the promotion authority within 1 working day."[13] Second, under step 12 of ¶ 2-4, battalion human resources must "[i]nput appropriate automated system transactions for [s]oldiers denied automatic promotion not later than the 19th of the month prior to the month of automatic promotion." Third, under ¶ 2-3(d), the DA 268, the form used to block a promotion by flagging a soldier's file, "will be submitted no later than the 20th day of the month preceding the month of automatic promotion." Although the other steps outlined in these two paragraphs appear to be mandatory, nothing indicates that they must be executed according to specific timelines.

Also counseling against the plaintiff's interpretation of "automatic" as "immediate" is the implication that a commander could not block a promotion. Paragraph 2-3 subsections (a) and (d) clearly allow a commander the option of not recommending a soldier for promotion, which would thereby block an otherwise automatic promotion. The plaintiff's interpretation that "automatic" means "immediate" is unreasonable because it would take away the plaintiff's commander's ultimate control over promotions in his unit. This interpretation would contradict the clear intent of ¶ 2-3(a) and (d) to give a commander the option of blocking the promotions of junior soldiers and is therefore unreasonable. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 63-65 (2012) (noting the presumption against

---

[13] The defendant's argument that the timeframes in Army regulations do not bind the Army is not persuasive. (ECF 32 at 13 (citing *Lewis*, 458 F.3d at 1378-79).) In *Lewis*, the Federal Circuit reiterated its conclusion from *Dysart* that a statute that provided for the automatic appointment of officers after an 18-month delay contravened the Constitution's appointments process. *Lewis*, 458 F.3d at 1377-79 (citing *Dysart*, 369 F.3d at 1313, 1315). Neither *Lewis* nor *Dysart* supports the proposition that the timelines the Army has implemented in its own regulations for promotions of junior enlisted soldiers are unenforceable.

ineffectiveness and favoring "[a] textually permissible interpretation that furthers rather than obstructs the document's purpose").

At oral argument, the plaintiff suggested that his commander could perhaps have preemptively filed a memorandum before the plaintiff was demoted to block any subsequent automatic promotion. But the regulations do not suggest that this procedure is ever contemplated. As such, the plaintiff's interpretation requiring the plaintiff to be immediately promoted as soon as he was eligible would deny a commander the proper time to exercise his authority over promotions of his junior enlisted soldiers. Such a reading of the regulations is not reasonable.

Army Regulation 600-8-19 creates a process that automatically promotes *eligible* junior enlisted personnel based on monthly promotion reports unless commanders block the promotion. The question remains whether the plaintiff was eligible for such an automatic promotion.

### 4.    The Plaintiff's Eligibility for an Automatic Promotion

#### a.    Army Regulation 600-8-19, ¶¶ 1-10, 2-3(c)(4)

The defendant argues that the plaintiff had to meet all the eligibility criteria under Army Regulation 600-8-19, ¶ 1-10. Consequently, the defendant argues, the ABCMR correctly concluded that the plaintiff was ineligible for promotion because the plaintiff was within 12 months of a conviction and therefore not fully qualified for a promotion without a waiver. The defendant also argues that the ABCMR properly concluded that the plaintiff was flagged, which also blocked any promotion. Finally, the defendant argues that the plaintiff's commander correctly blocked the plaintiff from promotion.

The plaintiff's countervailing argument that he did not need to meet the eligibility criteria, but rather only had to meet the time-in-service requirement and not be flagged is unpersuasive. The plaintiff is correct that Army Regulation 600-8-19, ¶ 1-10(a) provides that only higher-ranking soldiers, that is "[s]oldiers (SPC through master sergeant (MSG) are non-promotable to a higher rank when one of the [ ] conditions" set forth in that regulation are met. Paragraph 2-3(c)(4) of Army Regulation 600-8-19, however, provides that junior enlisted "[s]oldiers must meet eligibility criteria in paragraph 1-10" to be automatically promoted. The plaintiff's interpretation that ¶ 1-10(a) does not apply to him because he was seeking a promotion to E-2 would render ¶ 2-3(c)(4) essentially meaningless, making this interpretation unreasonable. *See Sharp v. United States*, 580 F.3d 1234, 1238 (Fed. Cir. 2009) (cleaned up) (rejecting an interpretation "which would violate the canon that we must give effect, if possible, to every clause and word of a statute and should avoid rendering any of the statutory text meaningless or as mere surplusage"); Scalia & Garner, *supra*, at 174-79 (the surplusage canon). The plaintiff's proposed reading of the regulation is therefore not persuasive. The plaintiff was subject to, and had to satisfy the requirements of, ¶ 1-10(a) to be eligible for an automatic promotion. The plaintiff's argument to the contrary is rejected.

The question then becomes whether the grounds the ABCMR provided precluded the plaintiff from receiving an automatic promotion.

### b.      Army Regulation 600-8-19, ¶ 1-10(a)(3)(e)

Dealing with the most clear-cut regulation first, ¶ 1-10(a)(3)(e) provides that an "[a]pproved retirement" renders a junior enlisted soldier ineligible for automatic promotion.  The plaintiff's retirement was approved on July 12, 2018.  (AR 14, 255-56.)  Accordingly, the plaintiff was not eligible for automatic promotion after July 12, 2018.  This provision has no bearing on whether the plaintiff was eligible before then.

The fact that the plaintiff was not eligible for automatic promotion after July 12, 2018, does mean, however, that any error by the plaintiff's commander in the attempt to block the plaintiff's promotion in September 2018 was harmless.  Even if the plaintiff should have been counseled on the reasons the promotion was blocked, counseling could not have changed his eligibility for promotion under Army Regulation 600-8-19, ¶ 1-10(a)(3)(e).  The ABCMR's rejection of the plaintiff's claim based on the failure to counsel as harmless error was correct, and the plaintiff's challenge to that conclusion is rejected.

### c.      Army Regulation 600-8-19, ¶ 2-3(c)(5)

The ABCMR and the defendant have relied on Army Regulation 600-8-19, ¶ 2-3(c)(5) to argue that the plaintiff was not promotable.  This subsection requires that "[a]ny [s]oldier previously reduced (for misconduct, inefficiency, or cause) must be fully qualified (without a waiver) for promotion to the next higher rank."  The ABCMR and the defendant argue that the plaintiff was not fully qualified for promotion without a waiver before July 12, 2018, because he was "[w]ithin 12 months [of his] court-martial conviction" under Army Regulation 600-8-19, ¶ 1-10(a)(2), and that he was properly subject to a flag blocking his promotion.  These bases are the substantive reasons why the plaintiff was found ineligible for automatic promotion.  These substantive reasons, at least one of which must be true for the plaintiff to have not been fully qualified for a promotion, would also independently block a promotion under Army Regulation 600-8-19, ¶¶ 1-10(a) and 2-3(c)(4).

In other words, the fact that the plaintiff needed to be fully qualified for a promotion provides no independent basis to deny the plaintiff an automatic promotion because any ground that would render him unqualified would itself block a promotion.  The question remains whether these other asserted grounds rendered the plaintiff ineligible for automatic promotion.

### d.      Army Regulation 600-8-19, ¶ 1-10(a)(2)

The ABCMR and the defendant argue that the plaintiff was within 12 months of a court-martial conviction and therefore ineligible for promotion under Army Regulation 600-8-19, ¶ 1-10(a)(2).  This argument is not persuasive.

A conviction is "1. The act or process of judicially finding someone guilty of a crime; the state of having been proved guilty.  2. The judgment (as by a jury verdict) that a person is guilty of a crime."  CONVICTION, Black's Law Dictionary (11th ed. 2019).

The plaintiff's only convictions occurred in 2014, when he was found guilty by a court-martial.  *Guardado*, 77 M.J. at 92.  The plaintiff's convictions and sentence were approved by

the convening authority in February 2015, after he had commenced serving his sentence in 2014. (AR 302, 319, 353.)  Although some of the plaintiff's convictions and his sentence were overturned on appeal, the remainder of the plaintiff's convictions were affirmed.  *Guardado*, 75 M.J. at 907; *Guardado*, 77 M.J. at 96.  He was subsequently acquitted of the only re-tried specification in 2018.  (AR 344, 347-48.)  Under the plain meaning of the term "conviction," the plaintiff's only convictions occurred in 2014.

In rejecting the plaintiff's claim, the ABCMR explained that "one may reasonably conclude that the [plaintiff's] convictions were not finalized, and his criminal prosecution not completed, until the [convening authority's] 11 June 2018 action."  (AR 307.)  The defendant builds on this argument and urges the adoption of a more technical understanding of the term "conviction."  The defendant argues that the plaintiff was not convicted until 2018 because the convening authority could have acted to reject the defendant's sentence and impose a lesser sentence after it was finally adjudged following the plaintiff's acquittal at the 2018 retrial.

The defendant's argument seeks to read into Army Regulation 600-8-19, ¶ 1-10(a)(2) a requirement that a court-martial sentence, not the conviction, be final under RCM 1209 before the 12 months required by ¶ 1-10(a)(2) begin to run.  While this argument might be supported in cases in which the convening authority had to approve a finding of guilt, here the plaintiff has demonstrated that the convening authority in 2018 did not have such a power.  The plaintiff's convictions were affirmed by the CAAF, and the record was "returned to the Judge Advocate General of the Army with a rehearing on [the aggravated sexual-contact specification] and on the sentence authorized."  *Guardado*, 77 M.J. at 96.  "But even when acting on remand, a convening authority may still only take action that conforms to the limitations and conditions prescribed by the remand."  *United States v. Carter*, 76 M.J. 293, 296 (C.A.A.F. 2017) (cleaned up.)  The CAAF only provided the authority to conduct a retrial on one specification and a rehearing on the sentence for the convictions that were affirmed; the convening authority in 2018 possessed "no independent statutory authority at that time to act on the findings" of the 2014 court-martial to overturn the convictions affirmed by the CAAF.  *Id.* (cleaned up).

Further, Army Regulation 600-8-2, ¶ 2-9(b)(1) specifically notes when a conviction must be final in accordance with RCM 1209 before a flag may be removed: when a punitive discharge is adjudged.  The fact that this regulation addresses the specific circumstance when a court-martial conviction becomes final suggests that the lack of a similar reference to finality or the RCM in Army Regulation 600-8-19, ¶ 1-10(a)(2) is purposeful.  *See Strategic Hous. Fin. Corp. of Travis Cnty. v. United States*, 608 F.3d 1317, 1330 (Fed. Cir. 2010) (cleaned up) (noting that, under the *in pari materia* canon, a court "should interpret statutes with similar language that generally address the same subject matter together as if they were one law"); Scalia & Garner, *supra*, at 167-69 (the whole-text canon).

The phrase "[w]ithin 12 months following a court-martial conviction" in Army Regulation 600-8-19, ¶ 1-10(a)(2) can be given a plain and natural reading.  Under that plain reading, the regulation means what it says: a soldier is not promotable within 12 months of a *conviction*, and not the final approval of the *sentence* that flows from the conviction.  The fact that a sentence could have been reduced by the convening authority after a re-sentencing does

not freeze or restart the 12-month bar on promotions.  The ABCMR's conclusion that the plaintiff's re-sentencing in 2018 was a bar to the plaintiff's promotion is contrary to law.

### e.        Army Regulation 600-8-19, ¶ 1-10(a)(7)

Finally, the ABCMR concluded that a flag that was imposed on the plaintiff's file blocked the plaintiff's promotion.  Pursuant to Army Regulation 600-8-19, ¶ 1-10(a)(7), "[a] [s]oldier [who] is denied favorable personnel actions under the provisions of AR 600–8–2" is ineligible for promotion.  The plaintiff argues the imposition of the flag was not supported by Army regulations; the defendant supports the ABCMR's conclusion.

Paragraph 3-1 of Army Regulation 600-8-2, the regulation governing the placement and removal of flags, provides that "[a] properly imposed [f]lag prohibits . . . [p]romotions in grade, lateral appointments, and frocking."  By implication, an improperly imposed flag does not prohibit a promotion.  *See* Scalia & Garner, *supra*, at 107-12 (the negative-implication canon).  Paragraph 2-1, entitled "General Policy," provides under subsection (c) that a flag is intended to be "emplaced during some type of disciplinary or administrative action until that action is concluded."  *See also* Army Regulation 600-8-2, ¶ 2-1(b) (noting that a flag is not "to be used for punishment or restriction, but only as an administrative tool").  Paragraphs 2-2 and 2-3 of Army Regulation 600-8-2 lay out all the circumstances in which a flag is required.  Under ¶ 2-2(c)(1), one of those circumstances is the "[i]nitiation of . . . court-martial proceedings."

Paragraph 2-9 governs the removal of a flag.  With regards to courts-martial, ¶ 2-9(b)(1) instructs a commander to "[r]emove the [f]lag when the [s]oldier is acquitted at court-martial or civilian trial and no other adverse action arising from the incident or charges is contemplated; . . . or when punishment from court-martial, civilian trial, or nonjudicial punishment is completed."

The record does not explain why the plaintiff was flagged beyond the record indicating usage of the codes corresponding to an "Adverse Action" and "Commander Investigation."  (AR 352); Army Regulation 600-8-2, ¶ 2-2(a), (c).  The ABCMR did not specify the basis for its conclusion that "the flagging action that was, or should have been, imposed against the [plaintiff] after he was released from confinement" was a sufficient ground to block the plaintiff's promotion.  (AR 307-08.)  It is unclear whether the ABCMR considered the need for the convening authority to approve the plaintiff's sentence to be a part of the court-martial proceedings.  That explanation would provide a possible justification for the plaintiff to remain flagged even after his sentence was completed on March 29, 2018.  Alternatively, the ABCMR may have believed the flag was imposed solely because the plaintiff was within 12 months of a court-martial conviction.  If the latter explanation formed the basis for the ABCMR's conclusion, that conclusion, as explained above, is contrary to law and cannot stand.  If it is the former, the ABCMR has failed to explain how it is interpreting ¶ 2-9(b)(1) and ¶ 2-1(b) and how these regulations apply to the plaintiff's case.

The plaintiff argued before the ABCMR that the flag on his file was improper because Army regulations required the removal of the flag after the plaintiff's sentence was completed on March 29, 2018.  (AR 318.)  The ABCMR did not address the plaintiff's argument.  More importantly, the ABCMR failed to provide an adequate explanation for its conclusion that the

flag on the plaintiff's file was proper.  One possible justification for the flag may be proper; one is in direct contravention of Army regulations.  Either way, without an explanation of its rationale, it is impossible to determine whether the ABCMR's decision is reasonable.

To comply with the APA's command to review the ABCMR's decision based on the reasoning that it provides, the case will be remanded to the ABCMR for 120 days to consider and explain whether the plaintiff's file was properly flagged or should have been flagged between April 2, 2018, and June 12, 2018.  Additionally, to expedite subsequent judicial review if the ABCMR does not grant the plaintiff relief, the ABCMR shall calculate the date by which the plaintiff should have been promoted assuming that the flag should have been removed by April 2, 2018, so that, in the event of further judicial proceedings, that date will be a part of the record, possibly obviating the need for a further remand.

The ABCMR shall also, consistent with this opinion, explain, even if it determines that the plaintiff was properly flagged through June 12, 2018, whether and why the plaintiff was ineligible for automatic promotion between that date and the approval of his application for retirement on July 12, 2018.  The ABCMR shall further determine whether sufficient time existed for the plaintiff to be promoted pursuant to the normal process and timeframe for automatic promotions between the removal of the flag on June 12, 2018, and the approval of the plaintiff's retirement on July 12, 2018.

## V.    CONCLUSION

The plaintiff's claim for promotion to E-8 was mooted by the ABCMR's granting the plaintiff's requested relief.  The plaintiff's claim for promotion to E-2 is justiciable and is not precluded by the plaintiff's voluntary retirement from the Army.

Army regulations provide for the automatic promotion of eligible junior soldiers unless their company commander blocks the promotion; such automatic promotions, however, are not immediate.  The plaintiff was required to meet the eligibility criteria under Army Regulation 600-8-19, ¶ 1-10 because Army Regulation 600-8-19, ¶ 2-3(c)(4) incorporates these requirements into the eligibility criteria for the automatic promotion of junior enlisted soldiers. The approval of the plaintiff's voluntary retirement rendered him ineligible for automatic promotion after July 12, 2018.

The plaintiff's re-sentencing in 2018 was not a ground to deny the plaintiff an automatic promotion.  Without another substantive ground, which itself would render the plaintiff ineligible for automatic promotion, the requirement that the plaintiff be fully eligible for promotion without waiver was not a sufficient ground to block the plaintiff's promotion.

It remains for the ABCMR to explain its reasoning fully for: (1) whether and why a flag was properly imposed or should have been imposed on the plaintiff so as to block his promotion between April 2, 2018, and June 12, 2018; (2) whether there was another ground on which the plaintiff was ineligible for automatic promotion between June 12, 2018, and July 12, 2018; and (3) whether there was sufficient time to promote the plaintiff under the automatic promotions process during that June-to-July period.  The ABCMR shall also determine the date by which the

plaintiff should have been automatically promoted in the event the flag was improper, because an automatic promotion is not immediate under the Army's regulations.  That latter determination is only relevant to calculating any back pay due to the plaintiff; if the ABCMR determines that the plaintiff was not properly subject to a flag and should therefore have been automatically promoted, the claim that the plaintiff should have been retired as an E-2 will be resolved by that determination.

A separate order reflecting this memorandum opinion will be entered directing the remand of the case.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**